UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO. 3:16-CV-00504-GNS-DW

STEPHANIE RAY                                                                              PLAINTIFF

v.

ENCOMPASS INDEMNITY CO.                                                       DEFENDANT

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Plaintiff's Motion for Declaratory Judgment (DN 19) and Defendant's Motion for Declaratory Judgement (DN 20). For the reasons outlined below, Plaintiff's motion is **DENIED**, and Defendant's motion is **GRANTED**.

### I.       STATEMENT OF FACTS AND CLAIMS

On September 8, 2014, Plaintiff Stephanie Ray ("Plaintiff") was injured in an automobile collision caused by Pete Mayfield ("Mayfield") in Elizabethtown, Kentucky. (Compl. ¶¶ 3, 6-7, DN 1-1). Mayfield's insurance provider, State Farm Mutual Automobile Insurance Company ("State Farm"), offered to pay Plaintiff $50,000 to settle her claim and $50,000 to Plaintiff's husband to settle his derivative loss of consortium claim, which together represented the total liability policy limit of $100,000. (Compl. ¶ 7; Def.'s Mem. Supp. Mot. Summ. J. 2, DN 20-1 [hereinafter Def.'s Mem.]). Plaintiff contends that Mayfield was an "underinsured driver," as his policy with State Farm was insufficient to adequately compensate Plaintiff for her damages. (Compl. ¶ 8).

At the time of the accident, Plaintiff held an insurance policy ("Policy") issued by Defendant Encompass Indemnity Company ("Defendant") which provided underinsured motorist ("UIM") benefits. (Compl. ¶ 11; (Def.'s Mem. 2; Def.'s Mem Supp. Mot. Summ. J. Ex. 1, DN

20-2 [hereinafter Policy]).[1]  In relevant part, the Policy provided that Defendant "will reduce total damages to any covered person by any amount available to that covered person, under any bodily injury liability bonds or policies applicable to the underinsured motor vehicle, that the covered person did not recover as a result of a settlement between that covered person and the insurer of any underinsured motor vehicle." (Policy 4 (emphasis deleted)).  The Policy further stated that Defendant "will not make duplicate payment under this coverage for any element of loss for which payment has been made by or on behalf of persons or organizations who may be legally responsible." (Policy 4).

Pursuant to KRS 304.39-320 and *Coots v. Allstate Insurance Co.*, 853 S.W.2d 895 (Ky. 1993), Plaintiff's counsel sent a letter informing Defendant of the settlement offer and its terms. (Compl. ¶ 9; Def.'s Mem. 2).  Defendant failed to respond within 30 days to advance Mayfield's policy limits and reserve its subrogation claims against State Farm and Mayfield. (Compl. ¶ 9; Def.'s Mem. 3).  Thereafter, Defendant informed Plaintiff's counsel that it did not intend to advance the policy limits and consented to the settlement, but later sent a letter offering settlement on terms inconsistent with those previously disclosed. (Compl. ¶ 9).

Plaintiff then filed suit in Hardin Circuit Court, stating claims against Defendant for UIM benefits and breach of contract. (Compl. ¶¶ 10-17).  Defendant removed the action to this Court.

---

[1] Regarding UIM benefits, the Policy stated that Defendant "will pay damages which any covered person is legally entitled to recover from the owner or operator of any underinsured motor vehicle because of bodily injury . . . 1. [s]ustained by a covered person, and 2. [c]aused by an accident arising out of the ownership, maintenance or use of an underinsured motor vehicle." (Policy 3 (emphasis deleted)).  The Policy defined the term "underinsured motor vehicle" as:

> [A] land motor vehicle . . . to which a bodily injury liability bond or policy applies at the time of the accident but the amount paid for bodily injury under that bond or policy to a covered person is not enough to pay the full amount the covered person is legally entitled to recover as damages.

(Policy 2-3 (emphasis deleted)).

(Notice Removal, DN 1). The parties have agreed to resolve the legal dispute over the amount of credit for liability coverage that Defendant could "set off" against Plaintiff's UIM benefits claim. (Agreed Order, DN 18; Pl.'s Br. 1, DN 19 [hereinafter Pl.'s Mem.]; Def.'s Mem. 3). Plaintiff contends this amount is $50,000, as received by her in her settlement with State Farm; Defendant argues it is entitled, both under the plain language of the Policy and Kentucky law, to set off the full amount of Mayfield's $100,000 liability policy limit. (Pl.'s Mem. 1; Def.'s Mem. 1-2).

## II. JURISDICTION

The Court has subject matter jurisdiction under 28 U.S.C. § 1441(a), as a civil action originally brought in a state court of which the district courts of the United States have original jurisdiction, under 28 U.S.C. § 1332(a) because there is diversity of citizenship between the parties and the amount in controversy exceeds $75,000, exclusive of interest and costs, and as the Defendant removed the action to this Court, as the district court of the United States for the district and division embracing the place where the state court action was pending.

## III. DISCUSSION

Under the Declaratory Judgment Act, 28 U.S.C. § 2201(a), "any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." Exercise of jurisdiction under the Declaratory Judgment Act is discretionary, not mandatory. *Bituminous Cas. Corp. v. J & L Lumber Co., Inc.*, 373 F.3d 807, 812 (6th Cir. 2004) (citing *Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491, 494 (1942)).

The Court considers five factors to determine whether it should exercise jurisdiction over a request for a declaratory judgment. *Grand Trunk W. R.R. Co. v. Consol. Rail Corp.*, 746 F.2d 323, 326 (6th Cir. 1984); *Bituminous*, 373 F.3d at 812-13 (citing *Scottsdale Ins. Co. v. Roumph*,

3

211 F.3d 964, 967 (6th Cir. 2000)). Neither party challenges this Court's exercise of jurisdiction to issue a declaratory judgment and, on balance, the factors weigh in favor of the Court's exercising jurisdiction.[2] *See Bays v. Summitt Trucking, LLC*, 691 F. Supp. 2d 725, 735 n.3 (W.D. Ky. 2010). Therefore, the Court will determine Defendant's obligations.

Defendant argues that it is entitled, both under the plain language of the Policy and Kentucky law, to set off the full amount of Mayfield's $100,000 liability policy limit against Plaintiff's UIM benefits claim, regardless of Plaintiff's unilateral attempt to set the value of her settlement at $50,000. (Def.'s Mem. 1-2). Plaintiff contends that where the tortfeasor's liability limits are, in fact, exhausted because of multiple claimants, the UIM carrier is credited for the amount paid by the liability carrier to the individual claimant, not the entire liability limit split between multiple claimants. (Pl.'s Mem. 2).

To review the parties' cross motions for declaratory judgment, the interpretation of the insurance policy is a question of law to be enforced under Kentucky law as written, with clear and unambiguous terms given their ordinary meaning. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78-79 (1938); *K.M.R. Foremost Ins. Grp.*, 171 S.W.3d 751, 752 (Ky. App. 2005); *Goodman v. Horace Mann Ins. Co.*, 100 S.W.3d 769, 772 (Ky. App. 2003). KRS 304.39-320 requires that insurers make UIM coverage available to their insureds, providing coverage in instances when

---

[2] For the sake completeness, the Court has considered all of the factors. First, declaratory judgment settles the controversy about the extent of Defendant's set-off for Plaintiff's claim. *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 555-56 (6th Cir. 2008). Second, a declaratory judgment would clarify the legal relations at issue, in that it would "resolve, once and finally, the question of the insurance indemnity obligation of the insurer." *Id.* at 556-58. Third, the case does not present the appearance of a "race for res judicata," as both parties have moved for declaratory judgment, and in either case the Court gives the relevant party the benefit of the doubt that no improper motive fueled its filing. *Bituminous*, 373 F.3d at 814. Fourth, a declaratory action would not increase the friction between federal and state courts or improperly encroach on state jurisdiction since there is no concurrent state proceeding, as this action was removed from state court. *Id.* at 813-15. Fifth, and finally, declaratory judgment is no less effective than any potential alternative remedy. *See id.* at 813.

the insured sustains damages beyond the tortfeasor's liability limits.³ In construing and applying a statute, the Court's "duty is to ascertain and give effect to the intent of the Legislature." *Steward v. ELCO Admin. Servs., Inc.*, 313 S.W.3d 117, 121 (Ky. App. 2010) (internal quotation marks omitted) (quoting *Beckham v. Bd. of Educ. of Jefferson Cty.*, 873 S.W.2d 575, 577 (Ky. 1994)). "To discern legislative intent and purpose, we look to the statute's plain language." *Progressive Max Ins. Co. v. Jamison*, 431 S.W.3d 452, 455 (Ky. App. 2014) (citing *Cabinet for Families & Children v. Cummings*, 163 S.W.3d 425, 430 (Ky. 2005)).

> The plain language of the UIM statute provides with respect to UIM insurance set-offs:
>
> The underinsured motorist insurer is entitled to a credit against total damages in the amount of the underinsured motorist's liability policies in all cases to which this section applies, even if the settlement with the underinsured motorist . . . is for less than the underinsured motorist's full liability policy limits.

KRS 304.39-320(5). *See also Jamison*, 431 S.W.3d at 458 ("KRS 304.39-320(5)'s unambiguous language . . . makes clear that the injured party, not that injured party's UIM carrier, bears the burden of any settlement below the tortfeasor's liability policy limits."). The UIM endorsement in the Policy tracks the Kentucky UIM statute, providing that the insured's total damages will be reduced "by any amount available to that covered person, under any bodily injury liability bonds or policies applicable to the underinsured motor vehicle, that the covered person did not recover as a result of a settlement between that covered person and the insurer of any underinsured motor vehicle." (Policy 4 (emphasis deleted)). This type of UIM coverage is known as "damages less limits," "where UIM benefits kick in where the tortfeasor's liability limits leave off." *Dawson v. Travelers Indem. Co.*, 2014 U.S. Dist. LEXIS 135789, at *6 (W.D. Ky. Sept. 25, 2014). This type is contrasted with the "damages less paid" type, which was employed in Kentucky until the

---

³ This statute is "part of the Motor Vehicle Reparations Act . . . , and, as such, is remedial legislation which should be generally construed to accomplish its stated purposes." *LaFrange v. United Servs. Auto. Ass'n*, 700 S.W.2d 411, 413 (Ky. 1985) (citation omitted).

5

Kentucky legislature amended the statute in 1988 to adopt the "damages less limits" provision. *Id.* at *10.

This Court assessed a virtually identical UIM policy in *Dawson*. In that case, the plaintiff claimed the per-occurrence limit of $100,000 "capped" the amount she could recover, as it was to be shared among 50 potential claimants involved in the underlying accident, which "forced" her to take the $5,000 settlement to which she had agreed. *Id.* at *7. The plaintiff argued the inequity of the UIM insurer receiving a credit to the full extent of the $50,000 per-person liability limit and that the $100,000 per-occurrence limit was insufficient to pay all claims, but did not introduce evidence of how many individuals actually made claims or whether the policy limits were in fact exhausted. *Id.* at *6-9. The Court found for the defendant, noting that it would not find against the purpose and policy underlying Kentucky's adoption of the "damages less limits" provision where the plaintiff had failed to justify a different interpretation or application. *Id.* at *10-11.

Plaintiff argues that this case is distinct from *Dawson* because it is undisputed here that the damages exceeded the policy limit and the limit was in fact exhausted by multiple claimants. (Pl.'s Mem. 6). The Kentucky Supreme Court has held, however, that:

> [W]hile the statute serves the remedial purpose of protecting auto-accident victims from underinsured motorists who cannot adequately compensate them for their injuries, that purpose has not been raised to the level of a public policy overriding other purposes of the MVRA, such as guaranteeing the continued availability of affordable motor vehicle insurance, or *overriding all other considerations of contract construction*.

*State Farm Mut. Auto. Ins. Co. v Hodgkiss-Warrick*, 413 S.W.3d 875, 881 (Ky. 2013) (emphasis added) (citation omitted). As Defendant properly notes, Kentucky is a "strict 'four corners' jurisdiction" in which matters of contract interpretation, including an insurance policy, begin "with the plain language of the contract itself." (Def.'s Mem. 5 (citing *3D Enters. Contracting*

*Corp. v. Louisville & Jefferson Cty. Metro. Sewer Dist.*, 174 S.W.3d 440, 448 (Ky. 2005); *Nationwide Mut. Ins. Co. v. Nolan*, 10 S.W.3d 129, 131-32 (Ky. 1999)). Nothing in the plain language of the Policy provides support for Plaintiff's argument, as it explicitly tracks the "damages less limits" formula that is also Kentucky's statutory standard.

Kentucky courts have held that the purpose and intent of the UIM statute is to treat the injured party as if the tortfeasor is adequately insured, meaning "the injured party must exhaust the tortfeasor's liability insurance before turning to its own carrier for compensation." *Jamison*, 431 S.W.3d at 458. Whether Mayfield's policy limit was in fact exhausted because of multiple claimants, and was therefore incapable of adequately compensating Plaintiff for her damages, does not alter the undisputed fact that Plaintiff voluntarily settled her *own* claim with State Farm for $50,000, less than the total policy limit. The Court is therefore satisfied that Defendant is entitled to set off the full $100,000 liability insurer's policy limit against Plaintiff's UIM coverage claim, in accordance with the plain language of the Kentucky UIM statute and the Policy itself.

## IV. CONCLUSION

For the reasons outlined above, **IT IS HEREBY ORDERED** as follows:

1. Defendant's Motion for Declaratory Judgment (DN 20) is **GRANTED**.
2. Plaintiff's Motion for Declaratory Judgment (DN 19) is **DENIED**.

**Greg N. Stivers, Judge**
**United States District Court**
October 23, 2017

cc: counsel of record